| | | |
|---|---|---|
| UNITED STATES TRUSTEE | ) | Misc. P. No. 20-00400-MJH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS MCAVITY, and | ) | |
| NORTHWEST DEBT RELIEF LAW | ) | |
| FIRM, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **ANSWER AND COUNTERCLAIMS FOR DECLARATORY JUDGMENT**

Defendants and (pursuant to the Counterclaims asserted below) counterclaimants, Thomas McAvity and Northwest Debt Relief Law Firm ("Firm" and, collectively with McAvity, "Defendants"), by and through undersigned counsel, [1] answer the United States Trustee's Complaint for Disgorgement, Sanctions and Injunction Against Thomas McAvity and Northwest Debt Relief Law Firm (the "UST Complaint"), and assert counterclaims for declaratory judgment pursuant to 28 U.S.C. § 157(a), (b)(1) and (b)(2), 28 U.S.C. § 2201 and Federal Rules of Bankruptcy Procedure 7001 and 7013, all as more specifically set forth below.

## <u>ANSWER</u>

Defendants respond to each numbered paragraph of the UST Complaint as follows, and each matter not specifically admitted herein is intended to be denied.

---

[1] Admission *pro hac vice* pending.

## I.    PARTIES

1.    Admitted.

2.    Admitted.

3.    Defendants allege that Firm is incorporated in Washington, and deny the balance of allegations in paragraph 3.

## II.    JURISDICTION

4.    Paragraph 4 consists solely of legal conclusions to which no response is required.

5.    The jurisdiction of this Court over this proceeding, and the proper venue of this proceeding before this Court is admitted.  Defendants also admit that this is a core proceeding.

6.    Paragraph 6 constitutes a statement of consent to which no response is required.

7.    Paragraph 7 consists solely of legal conclusions to which no response is required.

8.    Defendants admit Plaintiff's standing to seek the relief pled in the UST Complaint.

## III.    FACTS

9.    Admitted.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    Denied.

15.    Denied.

16.    Denied.

17.    Denied.

## A. THE PRE-PETITION FEE AGREEMENTS

### A.1. <u>In re Ulibarri</u>

18. Admitted.

19. Admitted.

20. Admitted.

21. Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

22. Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

23. Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

24. Admitted.

25. Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

26. Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

27. Denied.

28. Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto.

29. Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto.

### A.2. <u>In re Ross</u>

30. Admitted.

31.     Admitted.

32.     Admitted.

33.     Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

34.     Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

35.     Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

36.     Admitted.

37.     Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

38.     Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

39.     Denied.

40.     Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto. Defendants further allege that an amended and restated disclosure has been filed.

41.     Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto. Defendants further allege that an amended and restated disclosure has been filed.

**A.3.    <u>In re Atalig</u>**

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

46.     Defendants assert that the Pre-Petition Agreement speaks for itself, and deny all allegations contrary therewith.

47.     Denied.

48.     Admitted.

49.     Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto.

50.     Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto.

**A.4.    <u>In re Carey</u>**

51.     Admitted.

52.     Admitted.

53.     Admitted.

54.     Admitted.

55.     Admitted.

56.     Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto.

57.     Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto.

**A.5.    <u>In re Zimmerman</u>**

58.     Admitted.

59.     Admitted.

60.     Admitted.

61.     Admitted.

62.     Defendants admit that they did not execute a separate written agreement for chapter 7 services prior to filing the Zimmerman case under chapter 7 rather than chapter 13, and deny all other allegations contained in paragraph 62.

63.     Defendants admit that they did not execute a separate written agreement for chapter 7 services prior to converting the Zimmerman chapter 13 case to a case under chapter 7, and deny all other allegations contained in paragraph 63.

64.     Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto.

65.     Defendants allege that the Rule 2016(b) Disclosure speaks for itself and deny any allegation contrary thereto.

66.     Paragraph 66 is definitional and requires no response, and the footnote to paragraph 66 purports to reserve a right to amend, to which Defendants reserve the right to oppose.

## B.  THE POST-PETITION FEE AGREEMENTS

### B.1.  <u>In re Ulibarri</u>

67.     Admitted.

68.     Admitted.

69.     Admitted.

70.     Admitted.

71.     Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

72. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

73. Denied.

74. Denied.

75. Denied.

76. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

77. Admitted.

78. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

79. Denied.

80. Paragraph 80 calls for a legal conclusion and requires no response.

81. Denied.

82. Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

**B.2. <u>In re Ross</u>**

83. Admitted.

84. Admitted.

85. Admitted.

86. Admitted.

87. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

88. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

94. Admitted.

95. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

96. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

97. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

98. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

99. Denied.

100. Admitted.

101. Admitted.

102. Denied.

103.     Paragraph 103 calls for a legal conclusion and requires no response.

104.     Denied.

105.     Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

**B.3.    In re Atalig**

106.     Admitted.

107.     Admitted.

108.     Admitted.

109.     Admitted.

110.     Admitted.

111.     Admitted.

112.     Denied. Defendants affirmatively allege that they reimbursed Ms. Shuffield for various out-of-pocket expenses that she incurred on many cases wherein she provided 341 coverage as a professional (and mutual) courtesy; she was not compensated for her appearance.

113.     Defendants admit that the reimbursement to Ms. Shuffield described above was not initially disclosed and further allege that it was not required to be.

114.     Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

115.     Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

116.     Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

117.     Denied.

118.     Denied.

119.     Denied.

120.     Admitted.

121.     Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

122.     Denied.

123.     Denied.

124.     Admitted.

125.     Paragraph 125 calls for a legal conclusion and requires no response.

126.     Denied.

127.     Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

**B.4.     In re Carey**

128.     Admitted.

129.     Admitted.

130.     Admitted.

131.    Admitted.

132.    Admitted.

133.    Denied. Defendants affirmatively allege that they reimbursed Ms. Shuffield for various out-of-pocket expenses that she incurred on many cases wherein she provided 341 coverage as a professional (and mutual) courtesy; she was not compensated for her appearance.

134.    Defendants admit that the reimbursement to Ms. Shuffield described above was not initially disclosed, and further allege that it was not required to be.

135.    Defendants allege that Carey's testimony at the 341 meeting speaks for itself and deny all allegations contrary thereto.

136.    Defendants allege that Carey's testimony at the 341 meeting speaks for itself and deny all allegations contrary thereto.

137.    Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

138.    Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

139.    Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

140.    Defendants admit that they have not filed amendments to the schedules, and deny the remaining allegations in paragraph 140.

141.    Denied.

142.    Denied.

143. Defendants allege that Carey's testimony at the 341 meeting speaks for itself and deny all allegations contrary thereto.

144. Denied.

145. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

146. Admitted.

147. Admitted.

148. Admitted.

149. Defendants admit that they have not filed amendments to the schedules, and deny the remaining allegations in paragraph 149.

150. Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

151. Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

**B.5.    In re Zimmerman**

152. Admitted.

153. Admitted.

154. Admitted.

155. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

156. Admitted.

157. Denied.

158. Denied.

159. Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

160. Denied.

161. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

162. Admitted.

163. Admitted.

164. Defendants allege that the Post-Petition Agreement speaks for itself, and deny all allegations contrary thereto.

165. Denied.

166. Denied.

167. Admitted.

168. Admitted.

169. Denied.

170. Defendants allege that the appropriate standard for determining the reasonability of their post-petition fees involves the value of work done after the petition was filed, and not solely

after the Post-Petition Agreement was signed. Defendants deny the remaining allegations in this paragraph.

171.    Denied.

172.    Denied.

## C.  THE RULE 2016(b) STATEMENTS

### C.1.    In re Carey

173.    Admitted.

174.    Defendants allege that the Rule 2016(b) Statement speaks for itself and deny all remaining allegations contrary thereto.

175.    Admitted.

176.    Denied.

177.    Defendants allege that the Rule 2016(b) Statement speaks for itself and deny all remaining allegations contrary thereto.

178.    Denied.

### C.2.    In re Ross

179.    Admitted.

180.    Defendants allege that the Rule 2016(b) Statement speaks for itself and deny all remaining allegations contrary thereto.

181.    Defendants allege that the Rule 2016(b) Statement speaks for itself and deny all remaining allegations contrary thereto.

182.    Admitted.

183.    Denied.

**C.3.    In re Atalig**

184.    Admitted.

185.    Defendants allege that the Rule 2016(b) Statement speaks for itself and deny all remaining allegations contrary thereto.

186.    Defendants allege that the Rule 2016(b) Statement speaks for itself and deny all remaining allegations contrary thereto.

187.    Admitted.

188.    Denied.

189.    Defendants allege that the Rule 2016(b) Statement speaks for itself and deny all remaining allegations contrary thereto.

190.    Denied.

**C.4.    In re Zimmerman**

191.    Admitted.

192.    Admitted.

193.    Admitted.

194.    Denied.

**D.  THE WEBSITES**

195.    Admitted.

196.    Paragraph 196 calls for a legal conclusion and does not require a response.

197.    Admitted.

198.    Admitted.

199.    Admitted. Defendants affirmatively allege that this paragraph implies that a legal obligation exists that is not supported by the law.

200.     Admitted. Defendants affirmatively allege that this paragraph implies that a legal obligation exists that is not supported by the law.

201.     Admitted.

202.     Paragraph 202 calls for a legal conclusion and does not require a response.

203.     Admitted.

204.     Admitted.

205.     Admitted. Defendants affirmatively allege that this paragraph implies that a legal obligation exists that is not supported by the law.

206.     Admitted. Defendants affirmatively allege that this paragraph implies that a legal obligation exists that is not supported by the law.

207.     Admitted.

208.     Paragraph 208 calls for a legal conclusion and does not require a response.

209.     Admitted.

210.     Admitted.

211.     Admitted. Defendants affirmatively allege that this paragraph implies that a legal obligation exists that is not supported by the law.

212.     Paragraph 212 calls for a legal conclusion and does not require a response.

213.     Paragraph 213 constitutes bare speculation that does not require a response.

214.     Denied.

215.     Admitted.

216.     Paragraph 216 calls for a legal conclusion and does not require a response.

217.     Admitted.

218.     Admitted.

219.    Admitted.

220.    Denied.

221.    Denied.

222.    Admitted.

223.    Denied.

224.    Denied.

**E. THE 341 TESTIMONY**

225.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

226.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

227.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

228.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

229.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

230.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

231.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

232.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

233.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

234.    The 341 testimony and recordings of proceedings speak for themselves, and Defendants deny all allegations inconsistent therewith.

**F.  BACKGROUND FACTS**

235.    Paragraph 235 contains definitions, to which no response is required.

236.    Paragraph 236 contains definitions, to which no response is required.

237.    Paragraph 237 contains definitions, to which no response is required.

238.    Admitted.

239.    Admitted.

240.    Denied.

241.    Denied.

242.    Denied.

243.    The UST Complaint omits paragraphs 243 through 255.

IV. FIRST CLAIM FOR RELIEF
11 U.S.C. §§ 329(b); 526(a)(1)(2) & (3); 528(a) and (b); 707(b)(4)(C); and Federal Rule of
Bankruptcy Procedure 2016(b)
(Avoidance and Cancellation of Agreements and Disgorgement of Fees)

256.    Defendants incorporate their responses to all foregoing paragraphs.

257.    Admitted.

258.    Admitted.

259.    Denied.

260.    Denied.

261.    Denied.

## V. SECOND CLAIM FOR RELIEF
Request for Injunctive Relief Under the Court's Inherent Authority and 11 U.S.C. § 526(c)(5)

262.    Defendants incorporate their responses to all foregoing paragraphs.

263.    Admitted.

264.    Admitted.

265.    Defendants cannot quantify the phrase "high volume of cases" and therefore admit only that they have filed and continue to file multiple bankruptcy cases before this Court and others.

266.    Denied.

267.    Denied.

## VI. THIRD CLAIM FOR RELIEF
Sanctions and Civil Penalties under 11 U.S.C. §§ 105(a) and 526(c)(5)

268.    Defendants incorporate their responses to all foregoing paragraphs.

269.    Admitted.

270.    Admitted.

271.    Defendants allege that the statutory provisions cited in this paragraph speak for themselves. Defendants admit, however, that McAvity is an experienced practitioner and is held to the standard of understanding the statutory provisions governing his bankruptcy practice.

272.    Denied.

273.    Denied.

274.    Denied.

## AFFIRMATIVE DEFENSES

Defendants allege that one or more of the following defenses may apply to defeat the causes of action asserted by the United States Trustee: failure to state a claim upon which relief may be granted, estoppel, laches, waiver and collateral estoppel (issue preclusion). Defendants reserve the

right to assert any defense allowed under Rule 12 of the Federal Rules of Civil Procedure (incorporated herein through Fed. R. Bankr. P. 7012) as the same may become apparent through discovery, briefing, or otherwise.

**PRAYER FOR RELIEF**

Defendants respectfully pray the Court dismiss with prejudice the claims and causes of action asserted herein, granting the United States Trustee no relief; and granting Defendants such other or further relief as the Court deems just and appropriate.

**COUNTERCLAIMS**

Defendants bring these counterclaims pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2) and 2201(a), and Federal Rules of Bankruptcy Procedure 7001 and 7013, against Gregory M. Garvin, Acting United States Trustee (in his official capacity) ("UST" or "Defendant"), seeking declaratory judgment concerning the legality of certain practices relating to the bifurcation of chapter 7 cases and the use of attorney financing and payment management services to facilitate offering to consumer chapter 7 debtors post-petition payment terms of attorney fees, all as set out in greater detail, *infra*. In support of these counterclaims, Defendants allege as follows:

**JURISDICTION AND VENUE**

1. This Court has subject-matter jurisdiction over this proceeding pursuant to:

 a. 28 U.S.C. § 157(a), insofar as this proceeding arises under title 11 and a standing order of reference delegates jurisdiction over such matters from the district court to this Court;

b.      28 U.S.C. § 157(b)(1), insofar as this Court may hear and determine all cases under title 11 and all core proceedings under title 11 or arising in a case under title 11;

c.      28 U.S.C. § 157(b)(2), insofar as this proceeding implicates matters concerning the administration of the estate, and determinations as to the dischargeability of particular debts; and, as such, constitutes a core proceeding;

d.      28 U.S.C. § 2201(a), insofar as this proceeding presents a case of actual controversy within this Court's jurisdiction and seeks a declaration of the rights and other legal relations of interested parties involved in the above-captioned chapter 7 case;

e.      Federal Rule of Bankruptcy Procedure 7001, insofar as this proceeding involves *bona fide* questions concerning the dischargeability of a debt, and seeks a declaratory judgment relating to such questions; and,

f.      Federal Rule of Bankruptcy Procedure 7013, insofar as the causes of action asserted below may be characterized as compulsory counterclaims.

## THE PARTIES

2.      McAvity is a natural person, licensed to practice law in the State of Washington and to file bankruptcy cases before this Court. He owns and operates the Firm.

3.      The Firm is a business entity incorporated in the state of Washington and doing business in Washington and Oregon.

4.      Gregory M. Garvin is the Acting United States Trustee for Region 18, which includes the federal district in which this Court sits. He is named in his official capacity only.

5.    Garvin has sued Defendants herein challenging Defendants' practice of offering bifurcated engagements and (incorrectly) asserted practice of using third-party financing in the cases alleged in the UST Complaint.

## FACTUAL ALLEGATIONS

I.    <u>Bifurcation and the Traditional Structure of a Consumer Chapter 7 Engagement</u>

6.    The traditional structure of a consumer chapter 7 engagement involves the execution of a single, pre-petition engagement agreement involving all of the services expected to be provided through the chapter 7 process, and the prepayment of the entire attorney fee before the case is filed (hereinafter, a "Traditional Engagement").

7.    Bifurcation of a consumer chapter 7 engagement, as practiced by Defendants, involves splitting the services expected to be provided through the chapter 7 process into two, separate engagement agreements:

      a.    the first is signed pre-petition and involves only the services leading up to and including the filing of the petition, and other documents minimally required to successfully commence the chapter 7 case; and,

      b.    the second is signed post-petition and involves the remaining services to represent the debtor through the chapter 7 process,

(hereinafter, a "Bifurcated Engagement").

8.    Defendants offer prospective clients two, categorical options to structure their engagement:

      a.    First, the client may elect a Traditional Engagement, pursuant to which they prepay their entire attorney fee, the chapter 7 filing fee, and other out-of-pocket costs; or,

b.      Second, the client may elect a Bifurcated Engagement, pursuant to which they execute a pre-petition agreement and may prepay as much of the total chapter 7 fee as they either choose or are able, and a portion of the fee (not to exceed the reasonable value of the services to be provided under the post-petition agreement), is deferred until a post-petition agreement is signed. The fee associated with the post-petition agreement is commonly broken into installment payments. In a Bifurcated Engagement, Defendants may choose to waive fees associated with services performed under the pre-petition agreement and to advance the chapter 7 filing fee to the client under the post-petition agreement in order to offer what is commonly referred to as a "zero-down" engagement.

II.   Defendants' Relationship with Fresh Start Funding

A.   Background on Fresh Start Funding

9.      Fresh Start Funding, LLC ("FSF") is an Arizona limited liability company headquartered in Tempe, Arizona. FSF provides an integrated suite of services intended to facilitate attorneys like Defendants offering clients the option of a Bifurcated Engagement and the ability to make post-petition installment payments of attorney fees. These services include:

a.      a recourse line of credit, the repayment of which is secured by a collateral assignment of the attorney's accounts receivable, and personally guaranteed by the attorney;

b.      payment management services, such that when an attorney offers a Bifurcated Engagement and accepts post-petition installment payments of fees, and FSF manages these installment payments as the attorney's agent;

c.      credit reporting for clients making installment payments of attorney fees;

d.      a full line of recommended forms;

e.    ongoing support and best-practice education;

f.    periodic quality control of attorney's filings to monitor adherence to best-practice standards; and,

g.    a defense guaranty and indemnity in the event that the attorney's bifurcation practice or relationship with FSF is questioned or challenged.

10.    Defendants executed a "Line of Credit and Accounts Receivable Management Agreement," and a related "Line of Credit Note" with Fresh Start Funding on or about June 22, 2020 (collectively, the "FSF Agreement," a copy of which is attached hereto as Exhibit "A").

B.    The FSF Bifurcation Model

11.    Fresh Start Funding has developed recommended (and, in some cases, required) forms for participating attorneys to use in their bifurcated cases, and updates these forms as needed to respond to input from judges and the United States Trustee program. These forms include:

a.    a pre-petition services agreement (generally, the "Pre-Filing Agreement," a copy of which is attached hereto as Exhibit "B");

b.    a post-petition services agreement that includes authorization by which debtors provide consent to FSF providing payment management services to counsel (generally, the "Post-Filing Agreement," a copy of which is attached hereto as Exhibit "C");

c.    a Form B2030 Disclosure of Compensation (the "B2030 Disclosure," a copy of which is attached hereto as Exhibit "D").

The Pre-Filing Agreement, Post-Filing Agreement, and B2030 Disclosure are hereinafter referred to collectively as the "FSF Documents."

12.     FSF requires attorneys to undergo training to acquaint themselves with the FSF Documents and the recommended processes described below.

13.     When an attorney who participates in FSF's program first meets with a prospective client, they may a) present a Bifurcated Engagement as an option from the outset, or b) they may only present a Bifurcated Engagement once they ascertain that the client may struggle to prepay an attorney fee, or has some exigent circumstance (like a pending or imminent garnishment) that may make the process of accumulating enough funds to prepay a bankruptcy unfeasible. Regardless, once the option of a Bifurcated Engagement is presented, FSF recommends that attorneys use the Information Sheet to explain simply the choice between the prepaid and "pay-over-time" options, and to highlight any difference in the fee that may be charged for each option.

14.     If the client chooses a Bifurcated Engagement, FSF recommends that the attorney conducts appropriate diligence concerning the prospective debtor, including but not limited to ascertaining whether the client is eligible to file a chapter 7 case, whether it appears in their best interest to file a chapter 7 case (both as opposed to filing any bankruptcy, or filing under a different chapter), and whether there are potentially challenging circumstances in the client's situation that are likely to either complicate the chapter 7 process or that might militate in favor of attempting to resolve such circumstances prior to filing (hereinafter, "Diligence").

15.     The attorney then presents the client with the Pre-Filing Agreement and explains its terms. so that they will understand the documents that they will be asked to execute after the case is filed, assuming that the client chooses to retain the attorney to complete the case.

16.     Once the client executes the Pre-Filing Agreement, and the attorney completes Diligence, the attorney files the chapter 7 petition and the minimum documents required to commence the case pursuant to Federal Rule of Bankruptcy Procedure (hereinafter "Rule") 1007.

17.     After the case has been commenced, the client (now debtor) executes the Post-Filing Agreement, the attorney completes and files the remaining schedules and statements required by Rule 1007, and completes the representation of the debtor in the ordinary course of the chapter 7 case.

18.     The use of the FSF Documents and the process described in paragraphs 11 through 17, *supra*, are hereinafter referred to collectively as the "FSF Bifurcation Model."

19.     Defendants have integrated the FSF Bifurcation Model into their chapter 7 practice as described above.

C.  The FSF Financing Model

20.     Under the terms of the FSF Agreement, an attorney may draw or advance against their line of credit with FSF each time that they have a client execute a Post-Filing Agreement. The attorney submits three documents to FSF through an online portal:

a.      the Post-Filing Agreement;

b.      proof of the debtor's income; and,

c.      proof of the chapter 7 filing.

21.     Upon approval by FSF of the documents listed in paragraph 17, the attorney is eligible to draw on the line of credit in an amount equal to 75% of the post-petition fee associated with the Post-Filing Agreement. Of this total, 65% is funded directly to the attorney, and the remaining 10% is credited to a "Holdback Account."[2] The Holdback Account serves as a pooled risk fund against which debtor delinquencies and defaults can be offset as a hedge against the recourse nature of the debt, and the attorney's personal guaranty of the obligation.  Subject to a

---

[2] Under the FSF Agreement, FSF reserves the right to adjust funding percentages based upon perceived risks.

cap imposed on the Holdback Account and, depending on the payment history of an attorney's clients, the attorney may receive distributions of excess funds in the Holdback Account on a monthly basis. FSF charges a fee calculated as 25% of the amount of the post-petition fee associated with each draw.

22.     Also pursuant to the terms of the FSF Agreement, upon approval of a draw on the line of credit, the attorney's account receivable associated with the draw is pledged to FSF as collateral for the debt (the "Assigned Account").

23.     Similarly, under the terms of the FSF Agreement, FSF is appointed the attorney's agent to manage the payments associated with the Assigned Account. FSF uses the information in the FSF Payment Form to process electronic payments from the attorney's clients, a process that is done in the attorney's name. Payments that FSF collects from the attorney's clients are applied to the attorney's balance on the line of credit, including FSF's fee.

24.     Pursuant to the terms of the FSF Agreement, the attorney remains responsible for any fee disputes or refunds and retains sufficient control of the receivable to satisfy ethical responsibilities to the client.

25.     If a client is delinquent in making a scheduled payment, or defaults on the attorney's fee agreement, unpaid amounts are offset against the Holdback Account. Under the terms of the FSF Agreement, the attorney is obligated to make up any shortfall in the Holdback Account and, more generally, is obligated to repay advances and FSF's fee regardless of whether any particular client or, indeed, any clients pay the attorney's fees.

26.     The process and terms described in paragraphs 20 through 25 are hereinafter referred to collectively as the "FSF Financing Model."

27.     Defendants have integrated the FSF Financing Model into their chapter 7 practice as described above.

III.    The UST's Position and the Case and Controversy Presented

28.     Through the UST Complaint, the United States Trustee has challenged Defendants' practice of bifurcating chapter 7 cases, and (incorrectly) alleged on information and belief that in the cases referenced in the UST Complaint, Defendants worked with a third-party financing source. Although Defendants had not yet entered into the FSF Agreement at the time that they filed the chapter 7 cases referenced in the UST Complaint, Defendants believe that the United States Trustee's allegations demonstrate the likelihood that the United States Trustee will oppose the FSF Bifurcation Model and FSF Financing Model now employed by Defendants.

29.     Defendants believe that the FSF Bifurcation Model and FSF Financing Model collectively provide a valuable way to offer prospective debtors access to the bankruptcy system with the assistance of counsel, where they would otherwise find it difficult—if not impossible— to afford counsel.

30.     Defendants are further informed and believe that there are other attorneys practicing before this Court that might also offer a Bifurcated Engagement to prospective clients, and/or utilize third-party financing solutions, but for the atmosphere of uncertainty and risk currently attendant to these practices because of the positions advanced by the United States Trustee.

31.     This Court should provide guidance, in the form of declaratory judgment, clarifying the legality of these practices.

**CAUSES OF ACTION**

FIRST CAUSE OF ACTION
Declaratory Judgment
(*Legality of FSF Bifurcation Model*)

32.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

33. The FSF Bifurcation Model employed by Defendants is not prohibited by the Bankruptcy Code (11 U.S.C. §§ 101, *et seq*., hereinafter "Code"). More particularly,

    a. bifurcation creates a post-petition obligation of a debtor under the Post-Petition Engagement Agreement that is not subject to the Automatic Stay;

    b. bifurcation creates a post-petition obligation of a debtor under the Post-Petition Engagement Agreement that is not subject to the Discharge;

    c. the Pre-Filing Agreement complies with Sections 526 and 528 of the Code; and,

    d. the information about the FSF Bifurcation Model contained in the Form B2030 Disclosure of Compensation satisfies the requirements of Section 329 of the Code and Federal Rule of Bankruptcy Procedure 2016(b).

34. Defendants may charge a different fee under a Bifurcated Engagement than they charge under a Traditional Engagement, so long as the fee actually charged is reasonable under the lodestar standard incorporated under controlling law into Section 329 of the Code.

35. The FSF Bifurcation Model employed by Defendants is not prohibited by the Local Rules of the Bankruptcy Court for the Western District of Washington, including but not limited to L.R. 2089-1.

36. The FSF Bifurcation Model employed by Plaintiff is not prohibited by the Washington Rules of Professional Conduct ("WRPC"). More particularly,

    a. accompanied by robust consultation generating informed consent, a Bifurcated Engagement under the FSF Bifurcation Model satisfies Defendants' duty to provide competent representation under Rule 1.1 of the WRPC;

b.      accompanied by robust consultation, the Pre-Filing Agreement and Post-Filing Agreement provide adequate disclosure to generate informed consent under Rules 1.2, 1.4(b) and 1.5(b) of the WRPC;

c.      with informed consent, the structure of a Bifurcated Agreement under the FSF Bifurcation Model is a reasonable limitation or structuring of the scope of the engagement under Rule 1.2 of the WRPC; and,

d.      Defendants may charge a different fee under a Bifurcated Engagement than they charge under a Traditional Engagement, so long as the fee actually charged is "reasonable" under the WRPC.

### SECOND CAUSE OF ACTION
#### Declaratory Judgment
(*Legality of Counsel's Use of FSF's Financing & Payment Management Services*)

37.      Defendants incorporate the foregoing allegations as though fully set forth herein.

38.      The FSF Financing Model utilized by Defendants is not prohibited by the Code. More particularly,

a.      the FSF Financing Model does not implicate or violate the fee-sharing prohibition contained in Section 504 of the Code; and,

b.      the information about the FSF Financing Model contained in the Form B2030 Disclosure of Compensation satisfies the requirements of Section 329 of the Code.

39.      The FSF Financing Model utilized by Plaintiff is not prohibited by the WRPC. More particularly,

a.      the FSF Financing Model does not violate the fee-sharing prohibition contained in Rule 5.4 of the WRPC;

b.      the limited sharing by Plaintiff of a debtor's information with FSF, with the debtor's informed consent, does not violate the client confidentiality provisions of Rule 1.6 of the WRPC.

## PRAYER FOR RELIEF

Defendants pray that the Court:

A.      grant the First and Second Causes of Action asserted *supra* and enter one or more declaratory judgments:

1.   declaring whether the FSF Bifurcation Model (and/or its constituent parts referenced in the First Cause of Action) is prohibited by the Code or Local Rules and, if so, what sections of the Code or Local Rules prohibit it and in what way(s);

2.   declaring whether the FSF Bifurcation Model (and/or its constituent parts referenced in the First Cause of Action) is prohibited by the WRPC and, if so, what sections of the WRPC prohibit it and in what way(s);

3.   declaring whether the FSF Financing Model (and/or its constituent parts referenced in the Second Cause of Action) is prohibited by the Code or Local Rules and, if so, what sections of the Code or Local Rules prohibit it and in what way(s);

4.   declaring whether the FSF Financing Model (and/or its constituent parts referenced in the Second Cause of Action) is prohibited by the WRPC and, if so, what sections of the MRPC prohibit it and in what way(s);

B.      granting such other or further relief as the Court deems just.

RESPECTFULLY SUBMITTED this 13th day of July 2020.

/s/ Thomas McAvity
Thomas McAvity
Northwest Debt Relief Law Firm
*Correspondence Address:*
1312 Main Street
Vancouover, WA 98660
tom@nwdrlf.com

/s/ Daniel E. Garrison
Daniel E. Garrison, AZ Bar No. 021495
Admission *pro hac vice* pending
Protego Law, PLLC
1805 N. Scottsdale Rd., Ste. 100
Tempe, AZ 85281
Tel: (480) 504-6840
dan@protegolaw.com