Honorable Mary Jo Heston
Misc. Proceeding
Hearing Date: 09/03/2020
Hearing Time: 9:00 a.m.
Location: Tacoma, WA
Response Date: 08/27/2020

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| UNITED STATES TRUSTEE<br><br>Plaintiff<br><br>v.<br><br>THOMAS MCAVITY, and NORTHWEST DEBT RELIEF LAW FIRM,<br><br>Defendants | Misc. P. No. 20-00400-MJH<br><br>UNITED STATES TRUSTEE'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM |

Gregory M. Garvin, Acting United States Trustee for Region 18 (the "United States Trustee"), hereby moves for entry of an order dismissing the Defendants' Counterclaims, pursuant to Federal Rule of Bankruptcy Procedure 7012, incorporating Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted), and 28 U.S.C. § 2201(a). Defendants' attorney in this proceeding is a co-owner of Fresh Start Funding and has a significant financial interest in vindicating not only Defendants' conduct but Fresh Start Funding's. Defendants' appear to be seeking an advisory opinion on behalf of Fresh Start Funding that grants blanket approval of its business model, including what it refers to as the "FSF Bifurcation Model" and "FSF Financing Model." But Defendants have not stated any facts establishing any actual case or occurrence in their Counterclaims, and the United States

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 1 -

Government has not waived sovereign immunity as to this proceeding and its officers are, therefore, immune from suit. Moreover, this proceeding does not present a justiciable case or controversy.

## I. FACTS

Plaintiff the United States Trustee filed this Miscellaneous Proceeding against Thomas McAvity and Northwest Debt Relief Law Firm based upon Defendants' conduct in five separate chapter 7 cases. The allegations against Defendants are many and wide ranging. The Complaint includes claims under §§ 105(a), 329(b), 526(a)(1)(2)&(3), 526(c)(5), 528(a)&(b), 707(b)(4)(C), and Federal Rule of Bankruptcy Procedure 2016. While each of these cases used a fee agreement and payment structure apparently created by Fresh Start Funding, it is the Defendants' specific conduct in the five cases which is at issue. It is not clear, therefore, why Defendants' counterclaims, seeking a blanket ruling that the FSF models are appropriate, are ripe, why there is jurisdiction, or why the Defendants will suffer any cognizable harm from the failure to provide such a ruling *in addition to* a ruling on the issues raised in this Miscellaneous Proceeding.

## II. ARGUMENT AND AUTHORITY

### A. Defendants' Counterclaims are not Ripe for Adjudication.

The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). In order to conclude that a dispute is ripe for judicial review, a court must satisfy itself that there is "both [a] fitness of the issues for judicial

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 2 -

decision and [a] hardship to the parties of withholding court consideration." *Id.*, 387 U.S. at 149.[1]
"A case is ripe where the essential facts establishing the right to declaratory relief have already occurred." *Boeing Co. v. Cascade Corp.,* 207 F.3d 1177, 1192 (9th Cir. 2000). "The ripeness doctrine demands that . . . litigants' asserted harm is 'direct and immediate' rather than speculative or hypothetical." *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir. 1990). A showing of hardship requires "significant practical harm." *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014), quoting *Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1988).

The Eighth Circuit recently summarized the criteria for ripeness as follows:

> The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration. Ripeness requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. The fitness prong safeguards against judicial review of hypothetical or speculative disagreements. The hardship prong considers whether delayed review "inflicts significant practical harm" on the petitioner.

*United States v. Gates*, 915 F.3d 561, 563 (8th Cir. 2019) (per curiam) (internal citation and quotation marks deleted). "When evaluating the prudential aspects of ripeness, our analysis is guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care,* No. 18-55451, 2020 U.S. App. LEXIS 22740 at *28 (9th Cir. July 21, 2020) (internal citations omitted).

---

[1] The "hardship" requirement is generally considered "prudential," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014). In dicta, the Supreme Court has left open whether the prudential ripeness doctrine continues to be valid but has not reached the issue. *Susan B. Anthony List*, 573 U.S. at 167.

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 3 -

"The purpose of the 'fitness' test under *Abbott* is to delay consideration of the issue until the pertinent facts have been well-developed in cases where further factual development would aid the court's consideration." *In re Coleman*, 560 F.3d 1000, 1009 (9th Cir. 2009). By their nature, cases and controversies require concreteness and particularity. Courts are established to resolve specific disputes about specific cases, not to engage in broad-ranging advisory opinions about future contingencies. Thus, the Supreme Court has emphasized that "[t]he operation of [a] statute is better grasped when viewed in light of a particular application." *Texas v. United States,* 523 U.S. 296, 301 (1998). And that "judicial resolution . . . should await a concrete dispute about a particular" issue. *National Park Hospitality Association v. Department of the Interior*, 538 U.S. 803, 812 (2003); *see also id.* Thus, an issue is unfit for judicial resolution if "further factual development would significantly advance [the] ability to deal with the legal issues presented." *National Park Hospitality Association,* 538 U.S. at 812 (internal quotation marks and citation omitted).

The issues here, as broadly framed by Defendants, are not fit for judicial resolution at this time. Defendants assert broadly that the FSF Bifurcation and Financial Models are not prohibited by the Bankruptcy Code but apparently want the Court to do the work of combing through the Code and Rules to declare whether those models "and/or [their] constituent parts" are "prohibited by the Code or Local Rules and, if so, what sections of the Code or Local Rules prohibit it and in what ways." ECF #5, pg. 39, ¶ A.1. Defendants also demand a declaration as to whether the FSF Bifurcation Model and the FSF Financing Model are "prohibited by the WRPC [the Washington Rules of Professional Conduct] and, if so, what sections of the WRPC prohibit it and in what way(s)." *Id.* ¶ A.2. Again, the Court is left the task of reviewing all of the WRPCs and analyzing

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 4 -

the fee models in light of each provision and under all hypothetical fact patterns.

In other words, Defendants want a blanket "safe harbor" divorced from the particular circumstances of any one case, including the five cases identified in the Complaint. Defendants' demand for a blanket, one-size-fits-all, safe harbor is aimed squarely at resolving "speculative or hypothetical" claims (*Parrish v. Dayton*, 761 F.3d at 875), requiring "further factual development." *Hillblom v. United States*, 896 F.2d at 430.

Defendants' demand even seems to seek this Court's declaration that Fresh Start Funding's models are appropriate regardless of the lawyer involved, and regardless of the circumstances surrounding the lawyer's representation. ECF #5, pg. 28, ¶ 30 ("Defendant is further informed and believes that there are other attorneys practicing before this Court that might also offer a Bifurcated Engagement to prospective clients, and/or utilize third-party financing solutions, but for the atmosphere of uncertainty and risk currently attendant to these practices because of the positions advanced by the United States Trustee"). Yet Defendants do not have standing to raise the issue of whether Fresh Start Funding's models would be appropriate for a different lawyer.[2]

Insofar as Defendants implementation of the Fresh Start Funding models presents concerns, those issues will be resolved by the conclusion of this case based on the facts alleged in this case. The only point of the "declaratory judgment" counterclaims is to demand that the Court expand its ruling beyond the facts of the specific issues in this case and to rule on all hypothetical fact patterns. Therefore, the issues presented in the Counterclaims are unfit for judicial resolution.

---

[2] In addition, Defendants have no obvious interest in pursuing such a broad approach which could arguably help rival lawyers. The broad framing of the requested relief seems better suited to serve Fresh Start Funding's own financial interests rather than the Defendants'.

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

**B. Defendants Cannot Show "Hardship" Necessitating Immediate Judicial Resolution.**

Defendants cannot meet the "Hardship" requirement to justify seeking the Court's ruling on hypothetical circumstances. "'To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.'" *US West Comm'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (quoting *Winter v. Cal. Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1990)).

> [M]ere uncertainty as to the validity of a legal rule [does not] constitute[] hardship for purposes of the ripeness analysis…If we were to follow [this] logic, courts would soon be overwhelmed with requests for what essentially would be advisory opinions because most business transactions could be priced more accurately if even a small portion of existing legal uncertainties were resolved.

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 811, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003).

Here, Defendants are seeking, at best, to resolve uncertainty, and cannot show that withholding review would result in direct and immediate hardship. Defendants' Counterclaims even state that they are bringing the Counterclaims because of a claimed "likelihood that the United States Trustee will oppose the FSF Bifurcation Model and FSF Financing Model" and to remove "the atmosphere of uncertainty and risk currently attendant to these practices." ECF #5, pg. 28, ¶¶ 28, 30. As noted above, the Counterclaims are being brought in a vacuum, devoid of any facts regarding actual application. Any issues related to how the Fresh Start Funding models were actually applied by Defendants in particular cases will be resolved through the Miscellaneous Proceeding. There is no reason to expect that this will not provide ample guidance to Defendants without engaging in the speculation called for by the Counterclaims. The mere fact that attorneys may need to justify their fees in court if a court requires it does not constitute "hardship;" rather it

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

is what is contemplated by § 329 and FRBP 2017. Thus, the Counterclaims are not being brought to avoid direct and immediate harm to the Defendants, but instead to benefit Fresh Start Funding by removing a level of uncertainty and to provide blanket approval of its business practices.

Moreover, these Counterclaims are peculiar because declaratory judgment actions against the Government typically involve situations in which a regulatory agency is the decisionmaker and can impose fines and injunctive relief against the plaintiff without any court intervention. In that case, the hardship is that the administrative agency can impose penalties and other relief that will have immediate impact even if a court would later find such action to be unwarranted. But here, the United States Trustee cannot do anything except submit briefs to the Court, which is the decisionmaker. The mere fact that the UST could file a motion in some future case does not establish any harm, much less irreparable harm. *See* § 329; FRBP 2017.

### C. Defendants' Counterclaims Should be Dismissed Because They Do Not Present an Actual Controversy.

Insofar as Defendants seek an omnibus ruling that will protect Fresh Start Funding's use of the FSF Bifurcation Model and FSF Financing Model in future cases regardless of the circumstances, this does not present an "actual controversy" as is required by the federal Declaratory Judgment Act. 28 U.S.C. § 2201(a). As discussed above, such hypothetical claims are not sufficiently ripe or concrete for judicial resolution. That means that the only issues that are fit for decision are whether Defendants' fee practices are appropriate in particular cases before the Court.

Further, even if the issues were ripe and justiciable, which they are not, this Court should decline to hear the Counterclaims in its discretion. The federal Declaratory Judgment Act provides that "any court of the United States . . . *may* declare the rights and other legal relations of any

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 7 -

interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotation marks and citation omitted). Through its enactment, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton*, 515 U.S. at 288. Given the other issues with ripeness, the United States Trustee respectfully requests that the Court use its discretion and decline to hear the Counterclaims because the Counterclaims fail to present an actual controversy. Declining to hear the Counterclaims will also allow the Court and parties to focus their time and resources on the real issues in this case, the conduct of a specific attorney.

"An essential element for a declaratory judgment action is the existence of an *'actual controversy'* between the parties, a term which holds the same meaning as the cases and controversies requirement of Article III to the United States Constitution." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1302 (M.D. Fla. 2015)(emphasis added) (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40, 57 S. Ct. 461, 81 L. Ed. 617 (1937)). A court, therefore, must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)). "Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's

MOTION TO DISMISS COUNTERCLAIM

- 8 -

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

resolution of the matter would be purely academic." *Blitz,* 151 F. Supp. 3d at 1302 (citations omitted).

In this case, the "controversy" of the Counterclaims – the nature of the FSF models – between Defendants and the UST is entirely hypothetical. A court "is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard." *United States v. Alaska S.S. Co.*, 253 US 113, 116 (1920) (quoting *California v. San Pablo & Tulare R. R. Co.,* 149 U.S. 308, 314 (1843). Defendants in this case are asking the Court to adjudicate Fresh Start Funding's rights based on the fear that the United States Trustee may, at some point in the future, seek to dispute the Fresh Start Funding Agreements or the Fresh Start Funding Model under presently unknown facts of another case. This is a hypothetical dispute, based on hypothetical debtors. Even if the UST does bring an action to oppose the Fresh Start Funding Model or Fresh Start Funding Agreements, such an action will be the result of the application of those models to specific cases, with specific debtors, and based on specific agreements.

In a similar vein, Defendants failure to plead any specific facts upon which relief can be granted means their Counterclaim cannot survive a motion to dismiss. "To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While this pleading standard "does not require 'detailed factual allegations,'

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 9 -

. . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id. (quoting Twombly, 550 U.S. at 555)*. A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). Although a court must accept as true well-pled allegations, it is not bound to accept a legal conclusion couched as a factual allegation. *Iqbal,* 556 U.S. at 678. Here, Defendants have pled only legal conclusions and have not stated any facts to which the law can be applied.

**D.    The Counterclaims are Barred by Sovereign Immunity.**

The Counterclaims seek a declaratory judgment against the Acting United States Trustee in his capacity as a representative of the United States Government. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 474 (1994). "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." *United States v. Nordic Village*, 503 U.S. 30, 33 (1992). Moreover, "[t]he traditional principle [is] that the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarge[d] beyond what the language requires." *Id.* at 34 (internal quotations and citations omitted).

A claim of sovereign immunity is jurisdictional in nature and the federal Declaratory Judgment Act is not a jurisdictional statute: it does not confer jurisdiction where it does not already exist. "The filing of a counterclaim does not expand the right to assert a counterclaim—or to claim a credit—against the United States or a United States officer or agency." FRCP 13(d). Therefore, Defendants have the burden to show another statutory basis to justify an assertion that the United States has waived sovereign immunity with regard to the claims at issue here, and of showing that

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA  98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 10 -

this Court has jurisdiction. However, Defendants' Counterclaims provide no basis for such a finding. For purposes of this Motion, the UST has sought to address the arguments that could be raised by Defendants in support of their position.

**1. Section 106 of the Bankruptcy Code Does Not Waive Immunity Here.**

Defendants are seeking a broad declaration that the FSF Bifurcation Model and FSF Financing Model used by Fresh Start Funding are not prohibited by any provision of the Bankruptcy Code, the Local Rules, or the Washington Rules of Professional Conduct. ECF #5, pg, 31. However, in their Counterclaims Defendants identify only four specific provisions of the Bankruptcy Code that they appear to consider pertinent: 11 U.S.C. §§ 329, 504, 526, 528.

Section 106 of the Bankruptcy Code provides a list of 59 sections of the Bankruptcy Code as to which sovereign immunity is waived, at least to some extent, and the four sections cited by the Defendants are not included in the list. Section 106 provides in pertinent part:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
>
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
>
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 11 -

11 U.S.C. § 106.

As noted above, while Congress specified 59 sections of the Bankruptcy Code as to which sovereign immunity was abrogated, the four sections cited by Defendants were *not* included. "The doctrine of *expressio unius est exclusio alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885, (9th Cir 2005) (quoting *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991)). Thus, because the four sections quoted by Defendants are not included in § 106, sovereign immunity continues in full force as to those four sections.

Moreover, Congress has never waived sovereign immunity as to claims in bankruptcy court arising out of the Local Rules or the Washington Rules of Professional Conduct. Indeed, section 106 itself reflects Congress's intent to carve out issues relating to the WRPCs from the waiver of sovereign immunity. In bankruptcy cases, questions arising out of the WRPCs will be expected to come up only in connection with the major sections of the Bankruptcy Code dealing with legal representation of clients – in other words, sections 327, 328, 329, 330, 331, 504, 526, 527, 528, 707(b)(4), 1103, and 1195. Yet Congress exempted all of these from the waiver of sovereign immunity. Thus, the only reasonable conclusion is that Congress did not intend to waive sovereign immunity as to WRPC claims, particularly insofar as they relate to conduct covered by those sections of the Code. In sum, sovereign immunity bars suit on all of Defendants' Counterclaims.

2. **Section 702 of the Administrative Procedure Act Does Not Waive Immunity**.

Defendants could argue that, because they do not seek monetary relief, sovereign immunity has been waived by section 702 of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 702.

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

Section 702 provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

This provision is interpreted as waiving the United States' sovereign immunity in nonmonetary actions seeking relief for agency action (or failure to act) under federal law, including actions not arising under the APA. *See, e.g., Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 524 (9th Cir. 1989) ("The clear objective of the 1976 amendment [to 5 U.S.C. § 702] was to waive sovereign immunity as a defense in actions seeking relief other than money damages." (internal citation omitted)).

This waiver does not apply here, for two reasons. First, as discussed above, it does not apply where another statute (here, the Bankruptcy Code) impliedly denies relief. Second, this case does not involve "agency action" (or failure to act) as required by the APA waiver provision.

    a. *The APA Waiver Does Not Apply Because 11 U.S.C. § 106 Impliedly Forbids Relief.*

Section 702 of the APA includes a significant limitation on the waiver of sovereign immunity. It provides that:

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief *if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.*

5 U.S.C. § 702 (emphasis added). Thus, as described by the Supreme Court: "[Section 702's] waiver of immunity comes with an important carve-out: The waiver does not apply 'if any other

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 13 -

statute that grants consent to suit expressly *or impliedly forbids the relief which is sought*' by the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (emphasis added).

Here, Congress has already explicitly spoken in 11 U.S.C. § 106 to the issue of when and under what conditions sovereign immunity is waived in cases under the Bankruptcy Code. At a minimum, it has implicitly forbidden relief under 11 U.S.C. § 329, 504, 526, and 528. By excluding from its waiver the major sections of the Code bearing on lawyer representation, Congress also implicitly forbade declaratory relief regarding issues likely to arise in connection with those sections, such as the application of the WRPCs to conduct covered by those sections. Moreover, waivers of sovereign immunity are strictly construed in the Government's favor. *United States v. Nordic Village*, 503 U.S. at 33. Therefore, this adversary proceeding is barred by sovereign immunity.

### b. *The APA Waiver Does Not Apply Because There Has Been No "Agency Action" or Failure to Act.*

Defendants cannot show waiver under the APA. Waiver under the APA only applies to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. The United States Trustee's action in this case are directed at a specific attorney and his law firm, before the United States Bankruptcy Court, related to his specific conduct in those cases involving specific debtors. As such, the UST has taken no "agency action" as defined by the APA against either the Defendants or Fresh Start Funding.

This conclusion is reinforced by the UST's role. The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). The typical case involving a waiver of sovereign immunity with

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

regard to nonmonetary relief involves an administrative agency with the power to impose fines, forbid action, or the like. But with regard to attorney fees, the UST can take no action by itself. The only thing it can do is bring issues before the Court, as it is authorized to do under 11 U.S.C. § 307. But on all attorneys' fee issues, the Court decides. One could imagine, for example, an attorney bringing an adversary proceeding if the UST were deliberately preventing Defendants from obtaining hearings before a bankruptcy court and preventing the court from reviewing the attorney's fees; in that case, the attorney could conceivably allege that the UST had created an "atmosphere of uncertainty and risk." But here, Fresh Start Funding appears to be seeking a blanket ruling to be used in marketing the FSF Bifurcation Model and FSF Financing Model.

Defendants already have an adequate remedy immediately available: to litigate the Miscellaneous Proceeding on the merits of the case. This is the remedy that Congress contemplated for disputes relating to a bankruptcy attorney's fees. Thus, there is no basis for finding a waiver under the APA. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) ("When Congress has dealt in particularity with a claim and has intended a specified remedy . . . to be exclusive, that is the end of the matter; the APA does not undo the judgment") (internal quotation marks and brackets omitted). The only purpose served by the Counterclaims is to seek an advisory opinion granting approval of Fresh Start Funding's business practices.

### III. CONCLUSION

Defendants' Counterclaims should be dismissed. They simply have not stated facts supporting a claim upon which relief can be granted. The claims are not yet ripe for determination because Defendants can show neither fitness for review nor hardship from denying review.

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566

- 15 -

Instead, Fresh Start Funding has inserted itself into this litigation in order to ask this Court to engage in a hypothetical dispute, completely devoid of facts, in order to grant it an advisory opinion blessing its business model and affording it an undue benefit. Furthermore, the UST respectfully requests that the Court use its discretion to dismiss the Counterclaims under the federal Declaratory Judgment Act because the case is not ripe for determination and there is no basis for waiver of sovereign immunity. In addition to the lack of ripeness, there is no actual dispute between the UST and Fresh Start Funding. The UST has brought an action against Thomas McAvity and Northwest Debt Relief Law Firm. Any action brought by the UST involving Fresh Start Funding's business model will, necessarily, involve specific debtors, with specific attorneys, in specific cases, with specific facts. The United States has also not waived sovereign immunity. Section 106 of the Bankruptcy Code specifically omits 11 U.S.C. §§ 329, 504, 526, 528 from the list of code section in which the United States has agreed to abrogate immunity, and no other grounds exists for its waiver. For all these reasons, Defendants' Counterclaims should be dismissed.

DATED this Monday, August 3, 2020,

Respectfully submitted,

Gregory M. Garvin
Acting U.S. Trustee for Region 18

/s/ Matthew J.P. Johnson
Matthew J.P. Johnson, WSBA #40476
Attorney for the United States Trustee

MOTION TO DISMISS COUNTERCLAIM

Office of the United States Trustee
700 Stewart St., Suite 5103
Seattle, WA 98101-1271
Phone: 206-553-2000,
Fax: 206-553-2566