UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES TRUSTEE<br><br>Plaintiff,<br><br>v.<br><br>THOMAS MCAVITY, and<br>NORTHWEST DEBT RELIEF LAW<br>FIRM,<br><br>Defendants. | Misc. P. No. 20-00400-MJH |

**OBJECTION AND RESPONSE TO UNITED STATES TRUSTEE'S
MOTION TO DISMISS COUNTERCLAIMS**

Defendants and counterclaimants, Thomas McAvity and Northwest Debt Relief Law Firm ("Defendants"), by and through undersigned counsel, hereby object and respond to the "United States Trustee's Motion to Dismiss Defendants' Counterclaim" (the "Motion") found at docket entry 9.

**I. INTRODUCTION**

The United States Trustee ("UST") asserts two bases for dismissing Defendants counterclaims: sovereign immunity, and that there is not a justiciable controversy for the Court to decide. Both arguments fail. The UST is not immune from Defendants' counterclaims both as a result of a statutory abrogation of sovereign immunity, and because its voluntary and explicit consent to this Court's jurisdiction on its own claims also operates as consent to be counter-sued on Defendants' related claims. Finally, the counterclaims are not, as the UST asserts, hypothetical: Defendants have filed three bifurcated chapter 7 cases using Fresh Start Funding's program in the

month of August alone. Under well-settled legal principles, Defendants need not wait until the UST chooses to challenge these three new cases where the UST has already challenged the Defendants use of bifurcation in this very lawsuit. The Motion should be denied.

## II. ARGUMENT

### A. By Statute, the UST's Sovereign Immunity Is Limited to Situations in Which It Is Acting as the Trustee in the Case.

The UST cannot claim sovereign immunity from Defendants' counterclaims because in the regulatory capacity that it acts here, Congress abrogated the UST's sovereign immunity by statute. In applicable portion, Section 106 of the Bankruptcy Code provides:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
>
> (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
>
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

28 U.S.C. § 106(a)(1) to (a)(3). Thus, Section 106(a) constitutes a standing abrogation of sovereign immunity for "governmental units" as to "the application of" certain specified Code sections "to governmental units." Id.

The United States Trustee is such a governmental unit, except when acting in a specific capacity. Section 101 defines a "governmental unit" as follows:

> (27) The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (*but not a United States trustee while serving as a trustee in a case under this title*), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

28 U.S.C. § 101(27) (emphasis added). Thus, the United States Trustee is subject to Section 106(a) except "while serving as a trustee in a case under this title." Id.

Sections 701 through 702 of the Bankruptcy Code make it clear that the "trustee in the case" is *not* the same as the United States Trustee, but is instead the "disinterested person that is a member of the panel of private trustees established under section 586(a)(1) of title 28" that is appointed by the United States Trustee to administer the bankruptcy estate in a specific case. Id., § 701(a)(1).[1] Accordingly, the United States Trustee is a "governmental unit" subject to Section 106(a)'s abrogation of sovereign immunity except when acting as the actual trustee in a bankruptcy case. When the UST instead brings a miscellaneous proceeding against an attorney seeking disgorgement in multiple cases, sanctions and an injunction, it clearly and explicitly is not acting as a "trustee in the case," but instead is acting in a regulatory capacity. The UST acknowledges as much by invoking this Court's "inherent authority to 'control admission to its bar and to discipline attorneys who appear before it.'" Complaint, ¶ 7 (quoting Chambers v. NASCO, Inc., 501 U.S. 32 (1991)).

The remaining question, then, is whether the Counterclaims fall within the specific abrogation of sovereign immunity provided in Section 106(a) which, again, defines that abrogation with reference to specific code sections. See id., § 106(a)(1). The fundamental nature of the UST's claims against Defendants, and Defendants' reciprocal counterclaims, is grounded in Section 542,

---

[1] As the Court is well aware, Section 701 deals with the appointment of an "interim trustee" who, if not supplanted by a trustee appointed by election of creditors pursuant to Section 702, "shall serve as trustee in the case." Id., § 702(d).

one of the enumerated Code provisions as to which this Court is authorized to enter an order or judgment against the UST. Although the United States Trustee's claims against Defendants cite various statutory and rule-based vehicles for relief, the predicate for all of its theories is the "potentially dischargeable nature of post-petition attorney's fees." E.g., Complaint, ¶ 205. The UST's fundamental argument is that bifurcation of chapter 7 engagements is not legally effective, and Defendants' post-petition fees therefore are dischargeable pre-petition debts pursuant to Section 542 of the Code. All of its remaining arguments about disclosure, duties owed to assisted persons, etc., rely on this premise that Defendants could not legally seek post-petition payment of attorney fees.

Defendants counterclaims present the flip-side of this same coin. Defendants assert that bifurcation is legally effective and creates an enforceable, post-petition obligation that is not subject to Section 542's discharge or the stay and, more specifically, that Defendants' use of Fresh Start Funding's forms and processes to accomplish this is legally effective. Accordingly, Defendants' counterclaims fall squarely within Section 106(a)'s abrogation of sovereign immunity: they seek an order on an issue relating to the application of Section 542 to the United States Trustee while acting in its regulatory capacity. The UST's sovereign immunity argument therefore fails.

### B. By Filing This Adversary Proceeding against Defendants Challenging their Practice of Bifurcating Chapter 7 Cases, the UST Has Waived Sovereign Immunity as to Defendants' Counterclaims.

Even if Defendants' counterclaims fall—in whole or in part—outside of the statutory abrogation of sovereign immunity contained in Section 106, the UST has waived its sovereign immunity by suing Defendants to invalidate their bifurcation practice. By broadly invoking the Court's subject-matter jurisdiction and consenting to the entry of a judgment against it in this

miscellaneous proceeding, the UST waived its right to assert sovereign immunity as a bar against Defendants' counterclaims for declaratory relief on related issues.

The Ninth Circuit has considered this "sue and be sued" waiver of sovereign immunity in the context of the sovereign immunity enjoyed by states. In In Re Pegasus Gold Corp., 394 F.3d 1189 (9th Cir. 2005), the court noted that a state's sovereign immunity "is not absolute, however, and 'a State may waive its sovereign immunity by consenting to suit.'" Id. at 1195 (quoting Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999)). The Pegasus Gold court went on to note that "[w]aiver will generally exist where the State either voluntarily invokes jurisdiction or makes a clear declaration that it intends to submit itself to jurisdiction." Id. (citing College Savings Bank, 527 U.S. at 675-76).

The UST's consent to jurisdiction in this matter could not be more clear: "[t]he United States Trustee consents to adjudication and entry of final orders and judgments by the Bankruptcy Court for any and all matters arising in, or relating to, this adversary [*sic*] proceeding." Complaint, ¶ 6. In its broadest (but explicit) terms, the UST consented to this Court exercising jurisdiction over *any and all* issues *relating to* the positions taken by the UST in this proceeding. And where, as here, the UST has voluntarily invoked this Court's jurisdiction, it cannot thereafter reassert it as a bar. While it is true that the scope of a voluntary waiver is still technically at issue, fundamental issues of fairness militate against drawing absurdly fine distinctions to argue, for example, that two sides of a coin are not related because one is "heads" and one is "tails." There can be no reasonable argument that Defendants' counterclaims fail to relate to the issues asserted by the UST.

In its complaint, the UST has identified five chapter 7 cases where Defendants bifurcated their engagements to offer debtors post-petition installment terms on attorney fees. The UST

challenges these arrangements on a number of fronts, invoking several Code provisions and Rules: Sections 329, 526, 528 and 707, and Rules 2016 and 2017; and, as noted above, all built on a foundational argument implicating Section 542. The UST seeks an order invalidating the five debtors' fee agreements and directing Defendants to disgorge all fees, further sanctions and penalties, and a *going-forward injunction*.

After the five chapter 7 cases at issue were filed, Defendants adopted new engagement agreements and court disclosures promulgated by Fresh Start Funding, a national company with which Defendants contracted to provide working capital financing and payment management services for bifurcated chapter 7 cases. In August, Defendants filed three bifurcated chapter 7 cases using these improved forms and processes.

The question for this Court is whether Defendants counterclaims for declaratory relief concerning their current use of Fresh Start Funding's forms and recommended processes for bifurcating chapter 7 cases are sufficiently "related to" the UST's arguments that bifurcation is ineffective in creating an enforceable post-petition obligation, and its request for a permanent injunction against Defendants. The answer, of course, is "yes." The UST argues that Defendants cannot legally bifurcate chapter 7 engagements and seeks to enjoin them from trying, and Defendants seek a declaration from the Court that their current practice of doing so is consistent with the law, and should not be enjoined. "Heads" and "tails," perhaps, but two sides of the same coin. The UST's Motion should be denied.

**C. Defendants' Counterclaims Present an Actual Case and Controversy that Is Ripe for Decision, because They Currently Have Three Bifurcated Chapter 7 Cases Pending Before this Court that Were Filed Using FSF's Program.**

The UST incorrectly characterizes Defendants' counterclaims as presenting hypothetical issues that fail to create a justiciable controversy. As noted above, Defendants counterclaims are not hypothetical; they have filed three bifurcated chapter 7 cases using the forms and processes

promulgated by Fresh Start Funding, and there is no reason to conclude that the UST's fundamental arguments about bifurcation are not also implicated in these later-filed cases.[2]

The United States Supreme Court has taken a practical approach to the intersection of declaratory relief and the "case and controversy" requirement:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-242.

Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273.

The fundamental nature of declaratory judgment is that a party may seek the remedy proactively without waiting for the opposing party to take an adverse action where it is sufficiently clear that the parties' positions are opposed and that the current situation presents real and present risks of harm to the party seeking relief. It could not be clearer that the present situation satisfies the justiciability requirement where a) the UST has sued Defendants challenging their recent bifurcation practice on broad legal grounds, b) Defendants have counterclaimed seeking declaratory relief that their current bifurcation practice is allowable on those same, broad legal grounds, and, c) the "current" practice about which relief is sought has actually been implemented by filing cases and thereby subjecting Defendants to the risk of the same UST claims for voiding agreements, disgorging fees, having sanctions imposed, and being subjected to an injunction.

---

[2] The three cases are In re Muyoma, Case No. 20-12199-TWD, In re Sanders, Case No. 20-41963-MJH, and In re McAlister, Case No. 20-41966-MJH.

There is a real, justiciable controversy here, and not a hypothetical claim for what amounts to an advisory opinion. The UST's position on this issue is incorrect, and its Motion should be denied.

### III.   CONCLUSION

The UST cannot consent to this Court's jurisdiction to adjudicate its claims against Defendants, and then try to use sovereign immunity to shield itself from Defendants' reciprocal claims for declaratory relief. The issues fall within Congress's statutory abrogation of sovereign immunity, but even if they do not, the issues clearly fall within the broad consent to jurisdiction voluntarily given by the UST. And the issues presented by Defendants' counterclaims are real, and justiciable. The UST's Motion should be denied.

RESPECTFULLY SUBMITTED this 27th day of August 2020.

| /s/ Thomas McAvity | /s/ Daniel E. Garrison |
|---|---|
| Thomas McAvity | Daniel E. Garrison, AZ Bar No. 021495 |
| Northwest Debt Relief Law Firm | Admitted *pro hac vice* |
| *Correspondence Address:* | Protego Law, PLLC |
| 1312 Main Street | 1805 N. Scottsdale Rd., Ste. 100 |
| Vancouover, WA 98660 | Tempe, AZ 85281 |
| tom@nwdrlf.com | Tel: (480) 504-6840 |
| | dan@protegolaw.com |