1           IN THE UNITED STATES BANKRUPTCY COURT FOR THE

2                  WESTERN DISTRICT OF WASHINGTON

3    _____
                                    )
4    UNITED STATES TRUSTEE,         )
                                    )
5              Plaintiff,           )
                                    )
6       vs.                         )        No. 20-00400
                                    )
7    THOMAS MCAVITY and NORTHWEST   )
     DEBT RELIEF LAW FIRM,          )
8                                   )
               Defendants.          )
9    _____)

10

             TRANSCRIPT OF THE DIGITALLY-RECORDED RULING
11
             BY THE HONORABLE MARY JO HESTON
12
                     SEPTEMBER 3, 2020
13   _____

14

15

16

17

18

19

20

21

22

23

24   Transcribed by:  Robyn Oleson Fiedler

25

```
 1                    A P P E A R A N C E S

 2

 3    FOR THE UNITED STATES TRUSTEE:

 4    Matthew Joseph Plahuta Johnson
      DOJ-UST
 5    700 Stewart Street, Suite 5103
      Seattle, WA 98101
 6    Phone:  206-553-2000
      matthew.j.johnson@usdoj.gov
 7

 8
      FOR THE DEFENDANTS:
 9
      Daniel E. Garrison
10    PROTEGO LAW PLLC
      Scottsdale, AZ 85281
11    Phone:  480-504-6840
      dan@protegolaw.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          DIGITALLY RECORDED IN SEATTLE, WASHINGTON

 2                    SEPTEMBER 3, 2020

 3                        --ooOoo--

 4

 5          THE COURT:  All right.  I am ready to rule.  After

 6   review of the complaint, it appears to assert three claims

 7   for relief, under Section 11 USC 329, 526, 528, 707(b).  It

 8   seeks avoidance and cancellation of agreements and

 9   disgorgement of fees in specific cases.  It also requests

10   injunctive relief under the Court's inherent authority under

11   Section 526(c)(5), and finally, sanctions and civil

12   penalties under Sections 105(a) and 526(c)(5).

13          The counterclaim filed by the defendants in their

14   answer seeks two counts for declaratory relief.  First, they

15   seek, under Federal Rule of Bankruptcy Procedure 7001 and

16   7013, for the Court to determine the legality of the

17   defendants' bifurcation model and, two, they seek

18   declaratory judgment regarding the legality of the debtor's

19   use of FSF's financing and payment management services and

20   whether such bifurcation practices and the financing model

21   are prohibited by the Bankruptcy Code or local rules or

22   under the Washington Professional Rules of Conduct.

23          The United States Trustee has sought a motion to

24   dismiss these two identified counterclaims under Federal

25   Rule of Civil Procedure and Federal Bankruptcy Rule 7001(2).
```

1    Specifically, under Federal Rule of Civil Procedure

2    12(b)(1), they're seeking dismissal based on the fact that

3    this Court does not have subject matter jurisdiction over

4    the defendants' counterclaims because the counterclaims do

5    not present a ripe justiciable case or controversy as

6    required by Article III of the Constitution.

7           A claim is not ripe for adjudication if it rests

8    upon contingent future events that may not occur as

9    anticipated, or indeed, may not occur at all.  That's under

10   the statement from the Cardenas vs. Anzai case, 311 F.3d

11   929, at 934 (9th Cir. 2002).  And that case was quoting

12   Texas vs. United States, 523 U.S. 296 (1998).

13          Both Article 3 and the Federal Declaratory

14   Judgment Act, 28 USC 2201(a), require that there be an

15   actual case or controversy for the question to be

16   justiciable.  Here, the defendants request the Court to

17   declare whether both the bifurcation model used by the

18   defendant and the financing model are prohibited by the Code

19   or local rules.

20          In their counterclaims, the defendants request

21   blanket, general, and prospective rulings that bless these

22   practices in all hypothetical cases.  Such requests do not

23   meet the case or controversy requirements because such cases

24   are not yet before this Court, nor may they ever be before

25   this Court.  Hypothetical prospective claims that are not

1 applied to specific facts do not meet the case or

2 controversy requirement for Article III standing. And

3 without the defendants meeting these requirements, the Court

4 has no subject matter jurisdiction and cannot render an

5 opinion on the defendants' counterclaims.

6          Further, without a case or controversy presented,

7 the defendants have not presented a claim upon which, as a

8 matter of law, this Court can grant relief. Additionally,

9 even if this Court were to find that it had jurisdiction

10 under the case in controversy standards identified above, I

11 would exercise my discretion not to decide the declaratory

12 claims brought in the defendants' counterclaims for the

13 reasons set forth previously with regard to the case or

14 controversy requirement.

15          Thus, I am going to enter an order granting the

16 Trustee's motion to dismiss the counterclaims under Federal

17 Rule of Civil Procedure 12(b)(1) and 12(b)(6).

18          MR. GARRISON: Judge, may I be heard briefly?

19          THE COURT: I'm sorry?

20          MR. GARRISON: This is Mr. Garrison. Might I be

21 heard briefly?

22          THE COURT: On what point?

23          MR. GARRISON: I would just like to inquire about

24 whether or not we could have leave to amend the counterclaim

25 to assert the specific three Chapter 7 cases that have been

1  filed, rather than making, you know, the blanket

2  allegations, as you characterized them.

3        THE COURT:  Mr. Johnson, are you prepared to

4  address that at this time?

5        MR. JOHNSON:  Yes, Your Honor.  We would strongly

6  urge the Court to decline jurisdiction on those cases as

7  well, again, simply because we've got a lot in this case, as

8  it were.  I think contrary to Mr. Garrison's statements,

9  there are very specific conduct here related to the

10  Bankruptcy Code.  Some of it is fairly nuanced.  And it

11  doesn't necessarily have anything to do with those two other

12  cases -- or the three other cases.

13        I haven't looked at those three other cases.  I

14  don't know anything about them.  But counterclaims, again,

15  are still permissive.  And some of the same issues there

16  probably still exist, I mean, you know, the lack of -- I'm

17  sorry, the lack of the labor of soverign immunity, you know,

18  problems with pleadings.  I suppose those issues could be

19  resolved.  But it's going to be, you know, another motion to

20  dismiss, possibly more work on the pleadings before we ever

21  really even get into the meat of this issue.

22        It really feels like, again, Fresh Start Funding

23  is attempting just to highjack these proceedings to its own

24  end, when the United States Trustee really just wants to be

25  focused in this case on Mr. McAvity.  And so to that end,

1  again, we would really strongly request that the Court use

2  its discretion and decline jurisdiction over those

3  counterclaims.

4      THE COURT:  Mr. Garrison, while I understand the

5  desire to get some certainty in your business practices, I

6  will tell you that I do agree with Mr. Johnson.  When I

7  received the counterclaim, before the U.S. Trustee had even

8  filed its motion to dismiss, my reaction was that it went

9  well beyond what was alleged in the complaint.  And while

10  some of those issues may come up indirectly in terms of

11  defending the claims brought by the U.S. Trustee, the tenor

12  of the complaint is really one of what kind of disclosures

13  need to be made to the client relative to the practice of

14  bifurcation that Mr. McAvity has chosen to use, not an

15  attack on bifurcation generally.

16      So I think that even with the amendment that would

17  include cases that might have involved the financing, I

18  think I would reach the same conclusion.  Mr. Johnson kind

19  of opened that door a little bit in his argument, but I

20  think that we're not in the business of blessing practices

21  generally.  If the U.S. Trustee had attacked the use of

22  financing and the practice of bifurcation in the way that

23  Mr. McAvity had done in a more general sense, you might have

24  a better argument.  But reading the complaint, it's really

25  more a question of what's pre versus post, what was

1  disclosed, were some things charged that were identified as

2  post but were, in fact, pre.

3      I don't think that an amendment would cure the

4  problems that I identified under the case in controversy or

5  cause me to change my decision or exercising my discretion

6  to deal with them under the Declaratory Judgment Act.

7      So I'm going to deny the request.  I'll look to

8  the U.S. Trustee to submit the orders.

9      MR. JOHNSON:  Thank you, Your Honor.

10     THE COURT:  Thank you.

11     MR. JOHNSON:  Do we want -- I guess we still need

12  to discuss scheduling and any other matters that the Court

13  wants to address in the status conference.

14     THE COURT:  Well, I don't know.  Mr. Garrison,

15  since you haven't been practicing in this district, you may

16  not know what the time limits that we generally set are, but

17  I can kind of go through them, if you're interested.  If the

18  parties just want to talk and see if -- normally, we would

19  set the trial date, probably -- I think we're looking now at

20  the end of January, beginning of February.  And then you

21  move backwards, probably not dissimilar to other districts

22  that you have practiced in.

23     Generally, we give you 45 days to amend.  There's

24  the normal expert disclosures, which are 90 days prior to

25  trial.  Discovery is usually 60 days prior to the trial

1   date.  Dispositive motions are usually 30 days prior to the

2   trial date.  And Mr. Johnson can probably tell you a little

3   bit more specifically.

4           So if you want to talk and then just let

5   Ms. Bergeson know whether you want --

6           MR. GARRISON:  That would be great.  I'm sorry I

7   didn't look at your standing order before the hearing.  I

8   probably should have.  But I've been doing this for a very

9   long time.  I'm certain that we can fit into your

10  expectations or a schedule.  And Mr. Johnson and I, you

11  know, despite having very different legal perspectives on

12  things, we've had some friendly and professional exchanges.

13  I don't have any doubt that we could work out something

14  something that is mutually acceptable and will be acceptable

15  to the Court, too.

16          THE COURT:  All right.  That's great.  And if you

17  decide you want to go forward and pick those dates, then go

18  ahead and just file a stipulation on the dates that you

19  want, or indicate to Ms. Bergeson that you want us to enter

20  our standard order.

21          MR. JOHNSON:  Your Honor, Matthew Johnson, the

22  United States Trustee's Office.  Could I ask that what the

23  dates are that are available in February?

24          THE COURT:  We can look.  Right now, I think

25  everything's available.

1          COURTROOM DEPUTY:  Nothing the first week, and

2     nothing on the 18th.  But otherwise, we're available.

3          THE COURT:  Okay.  Other than the first week of

4     February or the 18th of February -- which would not be

5     available -- every other date right now in February is

6     available.

7          MR. JOHNSON:  Thank you, Your Honor.

8          MR. GARRISON:  Thank you, Your Honor.  I

9     appreciate it.

10          THE COURT:  All right.  Thank you.

11          (Whereupon, the case was adjourned.)

12                    * * * * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     CERTIFICATE

2

3           ROBYN OLESON FIEDLER certifies that:

4

5           The foregoing pages represent a complete

6    transcript of the digitally-recorded proceedings.  Some

7    editing changes may have been made at the request of the

8    Court.

9

10          These pages constitute the original or a copy of

11   the original transcript of the proceedings to the best of my

12   ability.

13

14          Signed and dated this 14th day of September, 2020.

15

16

17

18

19               by |s| Robyn Oleson Fiedler
                     ROBYN OLESON FIEDLER
20

21

22

23

24

25